Jaryl L. Rencher #4903 (jrencher@erlawoffice.com)
Kevin S. Gardner #6230 (kgardner@erlawoffice.com)
J. Kevin Murphy #5768 (kmurphy@erlawoffice.com)
**EPPERSON RENCHER & OWENS, P.C.**
Attorneys for Plaintiff Hartford Casualty Insurance Co.
10 West 100 South, #500
Salt Lake City, UT  84101
Telephone: (801) 983-9800
Fax: (801) 983-9808

Geoffrey S. Race (grace@warllc.com)
L. Michael Brooks, Jr. (mbrooks@warllc.com)
Adam P. O'Brien (aobrien@warllc.com)
WELLS, ANDERSON & RACE LLC
1700 Broadway, Suite 1020
Denver, CO  80290
Telephone: (303) 830-1212
Fax: (303) 830-0898
(*Pro Hac Vice* Pending)

---

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, a Connecticut corporation, | ) Case No.: ____2:08-cv-862_____ |
| | ) |
| | ) Judge _____Bruce S. Jenkins_____ |
| Plaintiff | ) |
| v. | ) |
| | ) |
| AGAPITO ASSOCIATES, INC., a Colorado corporation; MURRAY ENERGY CORP., an Ohio corporation; INTERMOUNTAIN POWER AGENCY, a Utah political subdivision; LOS ANGELES DEPARTMENT OF WATER AND POWER, a California political subdivision; Utah American Energy, Inc., a Utah corporation; Andalex Resources, Inc., a Delaware corporation; GENWAL RESOURCES; | ) **COMPLAINT FOR** ) **DECLARATORY RELIEF** ) ) **JURY DEMANDED** ) ) ) ) ) ) |

Bessie Allred, Tifani Marasco, Cody Allred, and )
Tylee Allred (individually and as representatives )
of the heirs and estate of Kerry Allred); Nelda )
Erickson, Brandon Erickson, Brian Erickson, )
Erick Erickson, and Lucile Erickson )
(individually and as representatives of the heirs )
and estate of Don Erickson); CARINA )
GUTIERREZ DE HERNANDEZ (individually )
and on behalf of L.H., a minor child) AND )
GUILLERMINA GONZALEZ DE )
HERNANDEZ (individually and as )
representatives of the heirs and Estate of Jose )
Luis Hernandez); JOSE LUIS PAYAN AND )
ISABEL VILLA GARCIA DE PAYAN )
(individually and as representatives of the heirs )
and Estate of Juan Carlos Payan); JAIME )
PHILLIPS AND SHEILA PHILLIPS )
(individually and as representatives of G. P., a )
minor child, and the heirs and Estate of Brandon )
Phillips); MARTA SANCHEZ (individually and )
as representative of Ar.S. and Ap.S., minor )
children) AYDALIZ SANCHEZ, and ARTURO )
SANCHEZ (individually and as representatives )
of the heirs and Estate of Manual Sanchez); )
WENDY BLACK (individually and as )
representative of C.B., a minor), ASHLEY )
PRUITT and EARLENE BLACK (individually )
and as representatives of the heirs and Estate of )
Don Black); DOYLE KIMBER (individually and )
as representative of the heirs and Estate of )
Brandon Kimber); JOSEPH RANDY )
BOULDIN; KORIE BOULDIN; CASEY )
METCALF; TRISTA METCALF; LESTER )
DAY, SHELLY DAY, CARL GRESSMAN, and )
KRISTEN KIMBER (individually and as )
representatives of the heirs and Estate of )
Brandon Kimber); FRANK MARKOSEK, )
TRUDY MARKOSEK, AND CASEY PRITT )
(individually and as representatives of the heirs )
and Estate of Brain Keith Pritt), LOLA JENSEN )
)

(individually as representative of the heirs and    )
Estate of Gary Jensen),    )
   )
     Defendants.    )

---

Plaintiff, Hartford Casualty Insurance Company (Hartford), by and through its attorneys, Jaryl L. Rencher, J. Kevin Murphy and Kevin S. Gardner of the law firm of Epperson Rencher & Owens, and Geoffrey S. Race, L. Michael Brooks, and Adam P. O'Brien, of the law firm Wells, Anderson & Race LLC, hereby submits this Complaint for Declaratory Relief and states as follows:

### THE PARTIES

1.      Plaintiff, Hartford Casualty Insurance Company ("Hartford") is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

2.      Defendant Agapito Associates, Inc. ("Agapito") is a Colorado Corporation doing business in the state of Utah.

3.      Defendant Murray Energy Corporation ("Murray Energy") is an Ohio Corporation doing business in the state of Utah.

4.      Defendant Intermountain Power Agency ("IPA") is a political subdivision of the state of Utah.

5.      Defendant Los Angeles Department of Water and Power ("LADWP") is a political subdivision of the state of California.

6.      Defendant Utah American Energy, Inc. ("UEI") is a Utah corporation doing business in the state of Utah.

7.      Defendant Andalex Resources, Inc. ("Andalex") is a Delaware corporation doing business in the state of Utah.

8.      Genwal Resources, Inc. ("Genwall") is a Utah corporation doing business in the state of Utah.

9.      Bessie Allred, Tifani Marasco, Cody Allred, Tylee Allred, Nelda Erickson, Brandon Erickson, Brian Erickson, Erick Erickson, Lucile Erickson, Carina Gutierrez de Hernandez, L.H. (a minor), Guillermina Gonzalez de Hernandez, Jose Luiz Payan, Isabel Villa Garcia de Payan, Jaime Phillips, Sheila Phillips, G.P. (a minor), Marta Sanchez, Ar.S. (a minor), Ap.S. (a minor), Aydaliz Sanchez, Arturo Sanchez, Wendy Black, C.B. (a minor), Ashley Pruitt, Earlene Black, Doyle Kimber, Joseph Randy Bouldin, Korie Bouldin, Casey Metcalf, and Trista Metcalf (collectively referred to as the "Allred Defendants") are Plaintiffs in an action styled *Bessie Allred et al. v. Murray Energy Corp., Utah American, Utah American Energy, Inc., Andalex Resources, Inc., Agapito Assoc., Inc., Intermountain Power Agency, Los Angeles Dept of Water and Power*, Civil No. 080905510, Third Judicial District, Salt Lake County, Utah (the "Allred Action").

10.     The Allred Defendants are citizens and residents of the state of Utah, except Jose Luis Payan, Isabel Villa Garcia de Payan, and Guillermina Gonzalez de Hernandez, who are residents of Mexico.  (*See* Allred Second Amended Complaint, attached as Exhibit A, ¶ 1.)

11.     Lester Day, Shelly Day, Carl Gressman, Kristen Kimber, Frank Markosek, Trudy Markosek, and Casey Pritt (collectively referred to as the "Day Defendants") are Plaintiffs in an action styled *Lester Day et al. v. Murray Energy Corp., Andalex Resources, Inc., Utah American*

*Energy, Inc., Intermountain Power Agency, Los Angeles Department of Water and Power*, *Agapito and Assoc., Inc.*, Seventh Judicial District, Carbon County, Utah (the "Day Action").

12.     The Day Defendants are residents of the state of Utah.  (*See* Day Complaint, attached as Exhibit B, ¶¶ 1-7, 14.)

13.     Lola Jensen (the "Jensen Defendant") is the Plaintiff in an action styled *Lola Jensen v. Murray Energy Corp., Utah American Energy, Inc., Andalex Resources, Inc., Agapito Associates, Inc., Genwal Resources, Inc., Intermountain Power Agency, Los Angeles Department of Water and Power*, Third Judicial District, Salt Lake County, Utah (the "Jensen Action").

14.     The Jensen Defendant is a resident of the state of Utah.  (*See* Jensen Complaint, attached as Exhibit C, ¶ 1.)

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and the Defendants and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this lawsuit occurred within this jurisdiction.

## GENERAL ALLEGATIONS

17.     Defendant Agapito purchased a business liability policy (the Business Liability Coverage Form) issued by Hartford, Policy No. 34 SBA PE 8257, with effective dates from July

13, 2007, to July 13, 2008.  This policy provided liability coverage, subject to specific terms, limitations, and exclusions.  A copy of this policy is attached as Exhibit D.

18.     Defendant Agapito also purchased an umbrella liability policy (the Umbrella Liability Provisions) issued by Hartford, Policy No. 34 SBA PE 8257, with effective dates from July 13, 2007, to July 13, 2008.  The policy provided umbrella liability coverage, subject to specific terms, limitations, and exclusions.  A copy of this policy is attached as Exhibit E.

19.     The Crandall Canyon Mine is located in Utah and, upon information and belief, was owned, as of August 2006, by Murray Energy (via its subsidiaries UEI and Andalex), IPA, and LADWP.

20.     Defendant Agapito was hired to provide and did provide engineering plans and analyses in connection with mining operations at the Crandall Canyon Mine.

21.     On August 6, 2007, there was a "bounce"[1] at the Crandall Canyon Mine that trapped and ultimately resulted in the deaths of six individuals.  Three other individuals were killed and six were injured in connection with related rescue efforts.

22.     The Allred, Day, and Jensen Defendants are the representatives, survivors, heirs, spouses, family members, and/or individuals, or observers of individuals, who are deceased or were injured in connection with the Crandall Canyon Mine accident, including all related rescue attempts.

---

[1] According to the National Institute for Occupational Safety and Health, a coal mine bump, also known as a bounce or burst, is the sudden outbursts of coal and rock that occur when stresses in a coal pillar, left for support in underground workings, cause the pillar to rupture without warning, sending coal and rock flying with explosive force.
(*available at* http://www.cdc.gov/niosh/mining/topics/groundcontrol/bumps/bumps.htm.)

23.     On or about September 2, 2008, the Allred Defendants filed their Second

Amended Complaint in the Allred Action alleging claims of Wrongful Death of Trapped Minors,

Survival Claims of Trapped Minors, Wrongful Death of Rescuers, Survival Claims of Rescuers,

Personal Injuries of Surviving Rescuers, Loss of Consortium, and Civil Conspiracy against all

defendants named in the Allred Action, including Agapito.  The Allred Defendants also allege

claims of Strict Liability for Ultra-Hazardous Activities (Murray Energy, UEI, Andalex, IPA,

and LADPW), Premises Liability (Murray Energy, UEI, Andalex, IPA, and LADWP), Infliction

of Emotional Distress (Murray Energy, UEI, and Andalex), Negligent or Reckless Failure to

Warn (Agapito), and Misrepresentation (Agapito).  (*See* Ex. A.)

24.     The Allred Defendants' Second Amended Complaint contains the following

allegations of fact against Agapito:

a.     Agapito was retained by Murray Energy Corporation, Utah American
       Energy, Inc., and Andalex Resources "to provide an engineering analysis
       to justify their plan to do the development and retreat mining of the West
       Mains barrier pillars" of the Crandall Canyon Mine.  (Ex. A, Second Am.
       Compl. ¶ 43 (emphasis in original).)

b.     Agapito presented its engineering analysis to Murray and others in three
       stages in July and August 2006, and April 2007.  (*Id.* ¶ 44.)

c.     Agapito calculated the stability factors of coal and barrier pillars in the
       Crandall Canyon Mine using engineering models.  (*Id.* ¶ 45.)

d.     Agapito's engineering analysis was "flawed and unconservative, and its
       conclusions unsafe," as found by the National Institute of Occupational
       Safety and Health in a September 2007 study.  (*Id.* ¶¶ 46, 48.)

e.     Agapito knew that components of its analysis were "far below NIOSH
       [National Institute of Safety and Health] minimums," but that Agapito
       justified its plan on the basis that the pillars were "*not intended for long-*

*term performance and, therefore, can accept a reduced design safety margin compared to typical life-of-mine mains pillars*."  (*Id.* ¶ 49 (emphasis in original).)

f.      Agapito "failed to properly assess all of the risks of the mining conditions" as part of its engineering analysis.  (*Id.*)

g.      Murray used the "misleading and flawed" Agapito reports to obtain government approval for its plan to engage in retreat mining.[2]  (*Id.* ¶ 50.)

h.      After an incident occurred during the retreat mining in another section of the mine, Agapito was asked to prepare a revised plan for the pillar design to aid in continued retreat mining.  (*Id.* ¶ 58.)  Agapito provided its revised plan on April 18, 2007.  (*Id.*)

i.       Agapito, as well as the other defendants named in the Allred Action, "prepared, contributed to, participated in, or oversaw the preparation and implementation of the plans to mine…"  (*Id.* ¶ 79.)

j.      "Agapito, by virtue of its repeated presence in the mine, knew of the severe and ongoing risks posed to miners and visitors to the mine from the time of the March bounces.  It also knew that the south barrier mine plan was substantially the same as the dangerous and failed north barrier development and retreat plan, under similar conditions, and that the plan posed grave dangers to miners and visitors to the mine during the south barrier development and retreat mining.  Agapito breached its duties to warn of these dangers and risks, and/or negligently failed to take other stops to avoid or avert the harm that would come from a mine plan MSHH termed 'destined to fail,' which breaches directly caused miners, inspectors and other visitors to the mine to be exposed to the risk of injury and death."  (*Id.* ¶ 83.)

---

[2] Retreat mining is a term used to reference the final phase of an underground mining technique known as room and pillar mining. This involves excavating a room or chamber while leaving behind pillars of material for support. This excavation is carried out in a pattern advancing away from the entrance of a mine. Once a deposit has been exhausted using this method, the pillars that were left behind initially are removed, or "pulled," retreating back towards the mine's entrance. After the pillars are removed, the roof (or back) is allowed to collapse behind the mining area. Pillar removal must occur in a very precise order in order to reduce the risks to workers, due to the high stresses placed on the remaining pillars by the abutment stresses of the caving ground.  (*available at* http://en.wikipedia.org/wiki/Retreat_mining.)

k.      "Despite its actual knowledge of these dangers to the miners and visitors in the south barrier, Agapito misrepresented the south barrier retreat plan as acceptable and safe.  Agapito's misrepresentations were negligent at best, or made with reckless disregard for the safety of those working in and visiting the area."  (*Id*. ¶ 84.)

l.       "Defendants [including Agapito] breached their respective duties of care to the miners who were killed and injured by negligently, recklessly, or intentionally acting or failing to act as described above, including their failure and refusal to create, use, follow, or implement careful, safe, and conservative mining plans and practices for the West Mains areas."  (*Id*. ¶ 85.)

25.     The Allred Defendants (the plaintiffs in the Allred Action) also allege, multiple times, that the defendants named in that action, including Agapito, undertook various duties and responsibilities related to "[p]reparing, reviewing, and approving mine plans, practices, and procedures and seeing that they were followed"  (*Id*. ¶¶ 93(d), 102(b), 109(b).)

26.     All of the allegations in the Allred Action against Agapito arise out of Agapito's rendering or of its failure to render professional services.

27.     On or about August 6, 2008, the Day Defendants (via their counsel) provided a copy of a Complaint to Hartford's counsel in which the Day Defendants allege claims of Negligence, Premises Liability, Strict Liability, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Violation of Utah Code § 40-10-18 (regarding mining and mine stability), Wrongful Death, Survivorship, Loss of Consortium, Concert of Action, and Civil Conspiracy against all defendants named in the Day Action, including Agapito.  (*See* Ex. B.)

28.     The Day Defendants' Complaint contains the following allegations of fact against

Agapito:

a.      The owners of the mine retained Agapito to assist in developing a mining
        plan.  (Ex. B, Compl. ¶ 30.)

b.      The owners and Agapito agreed upon a defective and dangerous mine plan
        and instructed Genwal Resources, Inc. [a subsidiary of Andalex and the
        company actually performing the mining] to conduct mining operations
        pursuant to the plan on the North barrier pillar.  (*Id*. ¶ 31.)

c.      Genwall encountered numerous difficulties in mining the North barrier
        pillar and the mine owners and Agapito were made aware of the dangerous
        conditions that existed.  (*Id*. ¶¶ 32, 34, 38.)

d.      After deciding to move operations, the mine owners consulted with
        Agapito and agreed on a defective and dangerous plan to mine the South
        barrier pillar. (*Id*. ¶ 40.)

e.      Specifically, the Day Defendants (the plaintiffs in the Day Action) assert
        claims against Agapito based on, *inter alia*, Agapito's:

    i.      Preparation, review and approval of mine plans, practices,
            and operations (*id*. ¶ 60);

    ii.     Preparation, review, and approval of roof control plans and
            systems (*id*.);

    iii.    Determination of the viability of safely mining the pillar
            barriers (*id*.);

    iv.     Preparation, review, and approval or recovery plans,
            materials, equipment, and processes (*id*.);

    v.      Planning related to conducting an ultra-hazardous activity;
            (*id*. ¶ 70);

    vi.     Outrageous and negligent disregard for dangerous mining
            plans (*id*. ¶ 76-77; 81-82); and

      vii.        Unlawful mine plan under Utah law.  (*Id*. ¶ 87-89).

29.      All of the allegations in the Day Action against Agapito arise out of Agapito's rendering or of its failure to render professional services.

30.      On or about September 2, 2008, the Jensen Defendant filer her Complaint in the Jensen Action alleging claims of Wrongful Death, Survival, and Civil Conspiracy against all defendants named in the Jensen Action, including Agapito.  The Jensen Defendant also alleges claims of Strict Liability (Murray, UEI, Andalex, IPA, and LADWP), Premises Liability (Murray, UEI, Andalex, Genwal, IPA, and LADWP), and Negligent and/or Intentional Infliction of Emotional Distress (Murray, UEI, Andalex, and Genwal).  (*See* Ex. C, Compl.).

31.      The Jensen Defendant's Complaint contains the following allegations of fact against Agapito:

      a.      Agapito Sacrificed Scientific and Professional Integrity to Justify Retreat Mining.  (Ex. C., Compl. at p. 11)

      b.      Agapito submitted a draft evaluation of a mining plan dated July 20, 2006 and "noted that such [Barrier] pillars were designed only to 'function adequately for short-term mining in the barriers (i.e. less than 1 year duty.'"  (*Id*. ¶ 42.)

      c.      Murray asked Agapito to provide them with an engineering analysis showing that retreat mining could be safely used to mine the Barrier Pillars.  (*Id*. ¶ 47.)

      d.      Murray put undue pressure on Agapito to quickly come up with an analysis that supported the desire of Murray Energy to remove more coal from the Barrier Pillars with retreat mining methods.  (*Id*. ¶ 48.)

      d.      Agapito calculated the stability factors of the standard production coal pillars and barrier pillars using engineering models.  (*Id*. ¶ 49.)

e.  Murray Energy used the results and plans generated by Agapito as the rationalization and excuse to ignore the serious pillar stability risks and well documented safety concerns related to retreat mining in the Barrier Pillars.  (*Id*. ¶ 51.)

f.  Agapito did not distinguish between the different stability factors required for barrier pillars and production pillars and therefore did not calculate a barrier pillar stability factor for the retreat mining in the Barrier Pillars. (*Id*. ¶ 58.)

g.  Agapito was willing to sacrifice professional integrity, ignore or play fast and loose with well established safety factors and modeling parameters, and succumb to the pressure exerted by Murray Energy to provide an analysis that would justify retreat mining in the barrier pillars.  (*Id*. ¶ 87.)

h.  The defendants, including Agapito, prepared, contributed to, participated in, or oversaw the preparation and implementation of the plans to mine in the west Mains at the Mine; required, permitted, encouraged, or failed to prevent dangerous and inappropriate mining activities or practices; and otherwise engaged or were involved in the implementation and conduct of the plans, practices, and activities at the Mine.  (*Id*. ¶ 182.)

i.  The defendants, including Agapito, undertook to perform various duties and responsibilities related to the design, engineering, planning, and operation of the Mine and the rescue efforts therein, including but not limited to the following: preparing, reviewing, and approving mine plans, practices, and procedures and seeing that they were followed; preparing, reviewing, and approving plans, practices, and procedures for roof control systems and seeing that they were followed; reviewing and implementing rock mechanics and geological studies and practices.  (*Id*. ¶ 193.)

32.  The Complaint in the Jensen Action also contains numerous allegations with respect to Agapito's alleged failure to properly use applicable models and failure to properly determine stability factors.  (*See, e.g.*, *id*. ¶¶ 68-86.)

33.  All of the allegations in the Jensen Action against Agapito arise out of Agapito's rendering or of its failure to render professional services.

34.     The recent findings of the United States Department of Labor, Mine Safety and Health Administration mirror many of the allegations in the Allred, Day, and Jensen Actions, specifically, "Agapito Associates, Inc., (AAI) inaccurately evaluated the conditions and events at the mine when determining if areas were safe for mining.  Based on its results, AAI recommended to the operator that mining methods were safe and pillar and barrier dimensions were appropriate when in fact they were not.  The negligence of the contractor directly contributed to the death of nine people.  This violation is an unwarrantable failure to comply with a mandatory standard."  (U.S. M.S.H.A. Mine Citation/Order, July 24, 2008, attached as Exhibit F, at 2.)

35.     Upon information and belief, Evanston Insurance Company is Agapito's professional liability insurance carrier and has been providing coverage, including a defense, to Agapito in connection with investigations and litigation related to the Crandall Canyon Mine accident that forms the basis of the Allred, Day, and Jensen Actions.

36.     Agapito seeks coverage from Hartford pursuant to the Hartford Business Liability Coverage Form and the Umbrella Liability Provisions.

37.      On August 12, 2008, September 18, 2008, and October 3, 2008 counsel for Hartford sent Agapito (via its counsel) a letter disclaiming coverage under the Business Liability Coverage Form and the Umbrella Liability Provisions.  Hartford specifically disclaimed any duty to defend or indemnify Agapito in connection with the Allred, Day, or Jensen Actions.  Copies of these letters are attached as Exhibits G, H, and I.

38.     Harford disclaimed coverage on the bases of, *inter alia*, professional services exclusions contained in both the Business Liability Coverage Form and the Umbrella Liability Provisions.  These provisions are outlined below.

### THE HARTORD BUSINESS LIABILITY COVERAGE FORM

39.     The Business Liability policy issued by Hartford to Agapito (Exhibit C) contains the following relevant language in its Insuring Agreement for liability insurance coverage:

### BUSINESS LIABILITY COVERAGE FORM

\* \* \* \* \*

**A.      COVERAGES**

**1.      BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

**Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result.  But:

**(1)**     The amount we will pay for damages is limited as described in Section **D. –** Liability And Medical Expenses Limits Of Insurance; and

- 14 -

**(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or medical expenses to which this insurance applies.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension – Supplementary Payments.

**b.**     This insurance applies:

**(1)**     To "bodily injury" and "property damage" only if:

**(a)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)**     The "bodily injury" or "property damage" occurs during the policy period . . . .

40.     The Business Liability Coverage Form, at Form SS 05 06 04 05, also contains an endorsement entitled "EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY," which states as follows:

## EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

## BUSINESS LIABILITY COVERAGE FORM

**1.**     The following exclusion is added to Paragraph **1., Applicable to Business Liability Coverage** (SECTION **B.** – EXCLUSIONS):

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by:

**a.**     Any insured; or

      **b.**      Any engineering, architectural or surveying firm that is performing work on your behalf in such capacity.

  **2.**      Professional services include:

      **a.**      The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; and

      **b.**      Supervisory, inspection, architectural or engineering activities.

41.      The Hartford Business Liability Coverage Form at Section D. 3. contains an "each occurrence limit" clause, which states, in relevant part:

  **3.**      **Each Occurrence Limit**

[T]he most we will pay for the sum of all damages because of "bodily injury", "property damage" and medical expenses arising out of any one "occurrence" is the Liability and Medical Expenses Limit shown in the Declarations.

42.      The Business Liability Coverage Form defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*See* Ex. C, Business Liability Coverage Form at § G. 16).

## THE HARTORD UMBRELLA LIABILITY PROVISIONS FORM

43.      The Umbrella Liability Policy issued by Hartford to Agapito (Exhibit D), contains the following relevant language in its Insuring Agreement for liability insurance coverage:

### UMBRELLA LIABILITY PROVISIONS

**SECTION I – COVERAGES**
**INSURING AGREEMENTS**

**A.**      **Umbrella Liability Insurance**

1.    We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage: or "personal and advertising injury" to which this insurance applies caused by an "occurrence".  But, the amount we will pay as "damages" is limited as described in **Section IV – LIMITS OF INSURANCE.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Section II – INVESTIGATION, DEFENSE, SETTLEMENT.**

2.    This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" only if:

    a.    The "bodily injury", "property damage" or "personal and advertising injury" occurs during the "policy period"; and

    b.    Prior to the "policy period", no "insured" listed under Paragraph **A.** of Section **III** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed "insured" or authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period" . . . .

44.    The Umbrella policy, at Form SX 21 13 04 05, also contains an endorsement entitled, "EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY," which states as follows:

**EXCLUSION – ENGINEERS, ARCHITECTS OR
SURVEYORS PROFESSIONAL LIABILITY**

This endorsement modifies insurance provided under the following:

**UMBRELLA LIABILITY PROVISIONS**

1.   The following exclusion is added to **B., Exclusions** (SECTION I –
COVERAGES):

This policy does not apply to "bodily injury", "property damage" or
"personal and advertising injury" arising out of the rendering of or the
failure to render any professional services by:

a.   Any "insured"; or

b.   Any engineering, architectural or surveying firm that is
performing work on your behalf in such capacity.

2.   Professional services include:

a.   The preparing, approving, or failure to prepare or approve, maps,
shop drawings, opinions, reports, surveys, field orders, change
orders, designs or drawings and specifications; and

b.   Supervisory, inspection, architectural or engineering activities.

45.   Like the Business Liability Coverage Form, the Umbrella Liability Provisions at

Section IV D. contains an "each occurrence limit" clause, which states, in relevant part:

D.   [T]he Each Occurrence Limit is the most we will pay for "damages"
because of all "bodily injury", "property damage", and "personal
advertising injury" arising out of any one occurrence.

46.   Also like the Business Liability Coverage Form, the Umbrella Liability

Provisions defines an "occurrence" as "an accident, including continuous or repeated exposure to

substantially the same general harmful conditions."  (*See* Ex. D, Umbrella Liability Provisions at § VII. F.1.).

## CLAIM FOR DECLARATORY RELIEF (ABSENCE OF COVERAGE)

47.     Hartford incorporates herein, by reference, all the allegations contained in paragraphs 1 through 46.

48.     The Plaintiffs in the underlying Allred, Day, and Jensen Actions, who are all defendants in this action, are seeking to recover damages from Agapito for "bodily injury."[3]

49.     The Defendants in the underlying Allred, Day, and Jensen Actions, who are Defendants in this action, may seek to allocate fault to Agapito based on Agapito's rendition of professional services, or Agapito's knowledge that arose out of the rendition of those professional services, which allegedly caused bodily injury and contributed to the damages claimed in those actions.

50.     The operative complaints in the Allred, Day, and Jensen Actions allege that Agapito caused bodily injury as a result of the professional services rendered by Agapito and/or as a result of Agapito's knowledge that arose out of the rendition of those services.

51.     There is no coverage under the Business Liability Coverage Form or the Umbrella Liability Provisions for all or part of the damages for which Agapito may be liable in the Allred, Day, and/or Jensen Actions.  Specifically, coverage is excluded on the following grounds:

---

[3] "Bodily injury" includes all physical injury, sickness, or disease sustained by a person and all mental anguish or death arising from injury, sickness, or disease.  (Ex. C, Business Liability Coverage Form at § G. 5.)

a.   Both the Business Liability Coverage Form and the Umbrella Liability Provisions expressly exclude coverage for "bodily injury" arising out of the rendering of or the failure to render professional services by Agapito. (*See* Exs. D and E, EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY (text set forth above).)

b.   Professional services include, but are not limited to, the preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications, including all supervisory, inspection, architectural or engineering activities.  (*Id.*)

c.   Agapito's liability, if any, in connection with the Crandall Canyon Mine accident, including the Allred, Day, and Jensen Actions, arises out of the rendering or failure to render professional services.

52.   Hartford seeks a judicial declaration pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure as to the extent of its coverage obligation, if any, under the terms and conditions of the Business Liability Coverage Form and the Umbrella Liability Provisions.  In particular, Hartford seeks a judicial declaration as to whether and to what extent it may have a duty to defend and/or indemnify Agapito with respect to its liability in the underlying Allred, Day, and Jensen Actions.

53.   Hartford has no adequate remedy at law.

**CLAIM FOR DECLARATORY RELIEF (SINGLE OCCURRENCE)**

54.   Hartford incorporates herein, by reference, all the allegations contained in paragraphs 1 through 53.

55.   The operative complaints in the Allred, Day, and Jensen Actions allege that Agapito caused bodily injury as a result of the professional services rendered by Agapito and/or as a result of Agapito's knowledge that arose out of the rendition of those services.

56.     Both the Business Liability Coverage Form and the Umbrella Policy Provisions contain an "each occurrence limit" clause, which places a limit on the amount of coverage available for any one occurrence.

57.     Both the Business Liability Coverage Form and the Umbrella Policy Provisions define an "occurrence" as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

58.     The allegations against Agapito in the Allred, Day, and Jensen Actions all arise out of the same, single occurrence, *to wit*, the Crandall Canyon Mine accident.  Here, the harmful "conditions" include those conditions allegedly arising out of Agapito's alleged failure to properly render professional services.

59.      Hartford seeks a judicial declaration pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure that the allegations in the Allred, Day and Jensen Actions all arise out of a single occurrence.

60.     Hartford has no adequate remedy at law.

**WHEREFORE** Hartford Casualty Insurance Company prays for judgment in its favor and against Defendants as follows:

1.     For a declaration as to the scope of coverage under the Business Liability Coverage Form and the Umbrella Policy Provisions for liability resulting from the underlying Allred, Day and Jensen Actions, and specifically:

a)     A declaration that Hartford is not obligated to defend or indemnify Agapito Associates, Inc. for any and all claims arising out of the events that occurred in the connection with the Crandall Canyon

Mine accident, including all claims alleged in the Allred, Day, and Jensen Actions.

b) A declaration that the allegations in the Allred, Day, and Jensen Actions all arise out of a single occurrence and, therefore, the "each occurrence limit" of the Hartford policies is applicable to all claimed damages for bodily injury arising out of the Crandall Canyon Mine accident.

2. For all other relief to which Hartford may be entitled.

## JURY DEMAND

Hartford hereby requests a trial by jury on all issues to the full extent possible

DATED this ____ day of November, 2008.

EPPERSON RENCHER & OWENS


_____/S/_____
Jaryl L. Rencher
J. Kevin Murphy
Kevin S. Gardner
Attorneys for Plaintiff


Address of Plaintiff:

Hartford Casualty Insurance Company
55 Farmington Avenue
Hartford, CT 06105